## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TY INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 25-3801 |
| v. | ) | |
| | ) | |
| TY BEANIES PTY LIMITED, | ) | Honorable John Robert Blakey |
| TY NORDIC OÜ, AND | ) | |
| SUNE GROUP PTY LTD. | ) | |
| | ) | |
| *Defendants.* | ) | |

## MOTION FOR SERVICE OF ORIGINAL PROCESS BY
## ALTERNATIVE MEANS AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff Ty Inc. ("Plaintiff" or "Ty"), respectfully submits this Motion for Service of Original Process by Alternate Means Pursuant to Federal Rules of Civil Procedure 4(f) and 4(h).[1] In support thereof, Ty states as follows:

### INTRODUCTION

In its Verified Complaint filed on April 8, 2025, Ty alleges that two former foreign distributors of its products, Ty Beanies Pty Limited ("LTD") and Ty Nordic OÜ ("Nordic") (sometimes collectively referred to as "Distributors"), have breached their Distributorship Agreements with Ty and are attempting to sell off Ty's goods without paying for them so that Distributors' ultimate owner, Toomas Nesan ("Neson"), can abscond with the proceeds, leaving Ty with no recourse. *See* Dkt. No. 1. The third defendant, Sune Group Pty Ltd. ("Sune"), was

---

[1]PTY (the Australian entity) and Nordic (the Estonian entity) are both represented in Estonia by Mr. Kaspar Koppel of Laus & Partnerid, Narva mnt 7B, 10117 Tallinn, Estonia, +372 5621 8292. Ty has retained Australian counsel and Estonian counsel to represent Ty's interests in this dispute as it concerns Ty's interests in those countries. Neither LTD nor Nordic have U.S. counsel who has been identified to Ty. However, Mr. Koppel is receiving and corresponding with Ty's lawyers from the U.S., Australia, and Estonia from his email address kaspar@lauspartners.ee.

formed by Neson two days after Ty terminated Mr. Neson's Australian distributorship and is the
intended recipient of the fraudulent transfer of Ty's goods. Ty is pursuing relief in this Court
expeditiously and wishes to serve its Complaint without delay in order  to continue to pursue all
available relief on an expedited basis.

Defendants are foreign entities based in Estonia and Australia and cannot be promptly
served by traditional means. According to the Hague Conference on Private International Law
(the "HCCH"), it takes approximately 3-6 months to execute a request for service under the
Hague Convention in Estonia, depending on the circumstances. *See*
https://www.hcch.net/en/states/authorities/details3/?aid=409. And according to the Attorney-
General's Department of the Australian Government, "[i]t generally takes around 3-6 months to
execute a request for service in Australia [under the Hague Service Convention]. However, the
current timeframe is longer due to a backlog of requests received during the COVID-19
pandemic." *See* https://www.ag.gov.au/international-relations/private-international-
law/frequently-asked-questions-
faqs#:~:text=It%20generally%20takes%20around%203,request%20for%20service%20in%20Au
stralia.

Notwithstanding the time-consuming nature of service under the Hague Convention, Ty
has been in recent and regular contact with Distributors and counsel for Ty has been in contact
with their Estonian attorney via email. Consequently, this Court can be confident that
Distributors are reachable by such means. And defendant Sune is owned by the same ultimate
beneficial owner of Distributors (Toomas Neson), who has recently and regularly corresponded
with Ty (on behalf of Distributors). Moreover, Janar Suleimanov, the claimed contact person for
Sune and former head sales manager for LTD (before Ty terminated its distributorship), has been

in contact with the entity transporting Ty's goods in connection with LTD's attempted fraudulent transfer, so Sune is reachable either through Mr. Neson or Mr. Suleimanov. Ty therefore asks this Court to authorize service, pursuant to Fed. R. Civ. P. 4(f) and 4(h), of Ty's Verified Complaint by (1) email to Distributors' and Sune's ultimate beneficial owner Toomas Neson; (2) email to Distributors' attorney, Kaspar Coppel; and (3) email to Sune's contact person Janar Suleimanov. This Court should grant Ty's request because quick action is necessary to protect Ty's rights, which cannot be accomplished by service under the Hague Convention, and service by the methods proposed by Ty is reasonably calculated, under all the circumstances, to apprise Defendants of the pendency of this action and afford them an opportunity to respond.

### BACKGROUND

Ty is a Delaware Corporation with its principal place of business in Illinois. Declaration of Chris Johnson submitted herewith ("Johnson Decl.") ¶ 3. Ty manufactures and sells toys and collectibles across the globe, including in Australia and the Nordic and Baltic countries. *Id.* ¶¶ 3-4. To facilitate those sales, Ty executed distributorship agreements ("Agreements") effective January 1, 2023 with Ty Beanies Pty Limited, organized under Australian law, and with Ty Nordic OÜ, organized under Estonian law (collectively "Distributors"). *Id.* ¶¶ 4-6. Both Distributors have principal places of business at the same address in Tallinn, Estonia, and are both beneficially and ultimately owned and operated by Toomas Neson ("Neson"), an individual residing in Estonia. *Id.* ¶¶ 5-6.

Ty's Complaint alleges, among other things, that Distributors breached their respective Agreements by failing to pay for Ty product shipped to them. *Complaint*, Dkt. 1 ¶¶ 39-48. Per the Agreements, all Ty product remains the property of Ty until it is paid for in full by Distributors. Johnson Decl. ¶ 8; Dkt. 1 ¶ 17. Additionally, Ty has the right to recover any Ty

product not paid for, and to re-purchase from Distributors any Ty product previously-purchased by Distributors, upon termination of the Agreements. Johnson Decl. ¶ 8; Dkt. 1 ¶ 21.

Distributors failed to pay Ty nearly $1.5 million for Ty product shipped to them. Johnson Decl. ¶ 9. So, as plainly permitted by the Agreements, Ty terminated the Agreements and demanded the return of its unpaid-for inventory. *Id.* Ty further notified Distributors that Ty intended to exercise its right to repurchase from Distributors any paid-for Ty product still in Distributors' possession or control. *Id.* These notices were provided to Neson, as the principal of both Distributors, via email.[2] *Id.* ¶ 10. In fact, Ty regularly corresponded with Neson who acted on behalf of LTD and Nordic, via email at his email addresses tom@nordic.com, tom@beanies.com.au, and/or tom@tomson.ee. *Id.*

Distributors, however, failed to return the inventory owned by Ty and declined to resell to Ty the paid-for Ty inventory. *Id.* ¶ 9. Distributors also refused to provide Ty with a list of accounts and current orders as requested by Ty and as required by the parties' Agreements. *Id.* Through this lawsuit, Ty seeks to enforce Ty's rights in the Agreements. Dkt. 1 pp. 20-22. Adding urgency, it has come to Ty's attention that LTD, in violation of its Agreement with Ty, attempted to transfer and/or sell approximately four (4) containers of Ty product still owned by Ty to defendant Sune, a company formed by Neson and Janar Suleimanov (LTD's former sales manager) just two days after Ty terminated its agreement with LTD and demanded the return of Ty product, all in an attempt to thwart Ty's efforts to re-possess and re-purchase the Ty products in LTD's possession or control. *Id.* ¶¶ 11-17. In short, Neson is attempting to move and sell Ty's products, presumably to hide and then pocket the proceeds. *Id.*

---

[2] Notice was provided via international courier as well.

When Ty found out about this attempted and unauthorized transfer of its goods, it contacted the shipper (ADN Logistics) and arranged for ADN to hold the goods until Ty could seek assistance of the Australian courts. ADN informed Ty that the intended recipient of this unauthorized transfer was Sune Group Pty Ltd, and the contact person for Sune was Janar Suleimanov, who corresponded with ADN via the email address info@sune.au. Johnson Decl. ¶¶ 12-17. In an order dated April 10, 2025, the Supreme Court of New South Wales issued freezing orders prohibiting LTD and Sune from removing from Australia or in any way disposing of, dealing with, or diminishing the value of any Ty products shipped to LTD under the Australian Distributorship Agreement until another hearing on April 14, 2025. At the April 14th hearing, the Court extended the freeze until April 28, 2025. Notice of this legal action was sent to Mr. Neson via email (tom@tybeanies.com.au). *Id.* ¶ 20.

During the Distributorship Agreements and after they were terminated, Neson regularly corresponded with Ty via email using the email addresses tom@nordic.com, tom@beanies.com.au, and/or tom@tomson.ee. *Id.* ¶ 10. He also specifically responded to Ty's termination notice from the email address tom@tybeanies.com. *Id.* Ty has every reason to believe Neson still has access to these email addresses, and that Neson still expects correspondence from Ty to be sent there. It is also reasonable to conclude that Sune can be contacted through its 90% owner, Neson, at these same email addresses, and that Sune can be contacted through its self-proclaimed representative Janar Suleimanov at info@sune.au. Further, since this dispute arose, Ty's counsel has regularly corresponded and continues to correspond with Distributors' counsel Kaspar Coppel, located in Estonia via his email, kaspar@lauspartners.ee. *Id.* ¶ 19.

Without the ability to serve Defendants via email, Ty fears that Neson will have liquidated Distributors' inventory of Ty's goods and absconded with the proceeds by the time Ty can serve Defendants with process under the express terms of the Hague Convention's provisions for international service of process.

## LEGAL STANDARD

Federal Rule of Civil Procedure 4(f) provides that an individual may be served with original process outside the United States by any internationally agreed means of service calculated to give notice, such as the Hague Convention, *or* "by any other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1), (3). Rule 4(h) allows this same form of service upon a foreign corporation, partnership or other unincorporated association. The United States, Australia, and Estonia are signatories to the Hague Convention, which applies here. The Hague Convention does not forbid service by email. *See NBA Properties, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, 549 F.Supp.3d 790, 797 (N.D. Ill. 2021) ("Service by email is not specifically provided for in the Convention, but neither is it forbidden."). Consequently, the Federal Rules of Civil Procedure allow service on Defendants by email if this Court approves it. *In re Paraquat Products Liability Litigation*, 2021 WL 4775284, at *2 (S.D. Ill., 2021). The decision whether to allow alternative methods of serving process under Rule 4(f)(3) "is committed to the sound discretion of the district court." *1025 W. Addison St. Apartments Owner, LLC v. Grupo Cinemex, S.A. de C.V.*, No. 20-CV-06811, 2021 WL 2136073, at *8 (N.D. Ill. May 26, 2021). Regardless of the form it takes, service under Rule 4(f)(3) must provide "notice reasonably calculated, under all the circumstances, to apprise [Defendant] of the pendency of the action and afford [it] an

opportunity to present its objections." *Id.*, *quoting Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The required showing approximates the good cause standard. *NBA Properties*, 549 F.Supp.3d at 797 (Court could authorize service by email as long as Plaintiffs "ma[d]e a showing as to why alternative service should be authorized"); *1025 W. Addison St. Apartments,* 2021 WL 2136073, at *8 ("Court-directed service pursuant to Rule 4(f)(3) is appropriate under certain circumstances, such as when 'there is a need for speed that cannot be met by following the Hague Convention methods.'"). Alternative service is "neither a 'last resort' nor 'extraordinary relief.'" *Id.*, quoting *Rio Props. v. RiolInt'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002).

Moreover, a plaintiff need *not* demonstrate that they have reasonably attempted to effectuate service by expressly provided means or the existence of exceptional circumstances requiring court intervention. *In re Paraquat*, 2021 WL 4775284, at *2 ("nothing in Rule 4(f)(1) requires a plaintiff to comply with the Hague Convention before alternate service is ordered."). In fact, courts routinely reject arguments that service under the Hague Convention must be attempted before alternative service is appropriate. *See 1025 W. Addison St., 2021 WL 2136073,* at *7-8 ("alternative service on a foreign corporation is governed by Rule 4(f)(3), and so it is not mandatory for a plaintiff to serve a foreign corporation under the Hague Service Convention, if the court authorizes another valid method of service."); *Commodity Futures Trading Comm'n v. Caniff*, No. 19-CV-2935, 2020 WL 956302, at *5 (N.D. Ill. Feb. 27, 2020) ("The plain language of the rule does not require a plaintiff to attempt service under Rule 4(f)(1) before seeking authorization to use an alternative means of service under Rule 4(f)(3)."); *Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018) (a plaintiff "is not required to first attempt service through the Hague Convention under Rule 4(f)(1) before asking [the] Court to allow

alternate means")(permitting alternate service by mail on Japanese defendant and its counsel). Nor is a defendant's consent to alternate service required. *1025 W. Addison St.*, 2021 WL 2136073, at *9. Finally, "nothing in Rule 4(f)(3) requires that the alternative service ordered by the Court pursuant to that provision must comply with the law of the foreign state where the service is to be effected." *Porter v. Scott Sports SA*, No. 23 C 12328, 2023 WL 8190381, at *2 (N.D. Ill., Nov. 22, 2023).

Courts have therefore allowed service by email on foreign entities on unexceptional grounds, such as where "there is a need for speed" or where "service by letter rogatory would [be] unduly expensive and time-consuming, costing [a plaintiff] thousands of dollars and potentially delaying the case[.]"*1025 W. Addison St.*, 2021 WL 2136073, at *9; *Porter*, 2023 WL 8190381, at *2.

**ARGUMENT**

Service by email on PTY and Nordic though its principal Mr. Neson, SUNE through its principal Mr. Suleimanov, and service upon Mr. Koppel (Estonian counsel for Distributors) is appropriate here. Robust precedent, including recent case law from this Court, establishes that a Court may authorize service of process by email on a foreign entity pursuant to Federal Rule of Civil Procedure 4(f) where, as here, there is a legitimate justification for a plaintiff's request to serve process by email and if it is reasonably certain that a defendant will receive process served by email. *See 1025 W. Addison*, 2021 WL 2136073 at *8. As detailed above, Ty faces potential irreparable harm if it cannot move quickly against Defendants, instead of waiting up to six months for service via the Hague Convention. Ty reasonably believes Distributors, in league with Sune, are in the process of liquidating their stocks of Ty's products (which are still owned by Ty) so that Neson can abscond with those ill-gotten gains. Ty therefore faces a significant risk

of being left remediless for Distributors' breaches of their Agreements if it cannot pursue relief in the near term. And, of course, Ty cannot effectively petition this Court for relief until Defendants are served. *Porter v. Scott Sports SA*, 2023 WL 8190381, at *1 (N.D. Ill., 2023) ("Before a federal court may exercise jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Ty therefore has legitimate "a need for speed" and "time-consuming" service by letters rogatory will prejudice Ty, potentially irreparably. *See NBA Properties*, 549 F.Supp.3d at 797 (email service on Chinese defendants in trademark case was justified "to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable."); *1025 W Addison Street Apts.*, 2021 WL 2136073 at *8 (alternative service under 4(f)(3) on Mexican defendant's counsel was proper where it was argued, among other things, that defendant's actions suggested dilatory and evasive intent, the Hague Service Convention process would take inordinately long to complete, defendant's financial status rendered it urgent for the case to proceed quickly.); and *Porter*, 2023 WL 8190381 at *2 (alternative service via mail, email and facsimile on Taiwanese defendant was proper under Rule 4(f)(3) where "service by letter rogatory would have been unduly expensive and time-consuming, costing [Plaintiff] thousands of dollars and potentially delaying the case for up to a year.")

Moreover, the facts demonstrate that service by email is reasonably calculated to reach all Defendants, who will suffer no prejudice if they are served using that method. The ultimate and beneficial owner of all three defendants, Toomas Neson, is no stranger to Ty, and the correct email addresses to reach him are well known. Johnson Decl. ¶ 10. Neson has communicated with Ty by email extensively and recently in the ordinary course of Distributors' business dealings with Ty. Neson even acknowledged by email receiving Ty's notice of termination to

Distributors, which was sent to Neson by email. And Sune's representative Janar Suleimanov has emailed ADN Logistics—the entity currently holding some of the Ty inventory at issue here—concerning the very subject matter of this litigation. *Id*. ¶ 16. Finally, emailing Ty's Complaint and Summons and other filings in this case to Distributors' counsel—who also has recently corresponded with Ty via email—removes any remaining reasonable doubt that Defendants will receive these papers. *Id*. ¶ 20. Moreover, Mr. Neson is well aware of Ty's claims against LTD, Nordic and Sune, based on previous communications between the parties and their counsel, and based on legal actions taken against Defendants in Australia. Consequently, this Court can be confident that Defendants will receive equally clear notice via service by email as they would if service were made through the Hague Convention. *NBA Properties*, 549 F.Supp.3d at 797 ("email was a more reliable method of service in this case [against Chinese trademark defendants] because Defendant's email address was verified by the sales platform, while their physical addresses were not."); *In re Paraquat*, 2021 WL 4775284 at *3 (service by email on Swiss defendant was appropriate where, among other things, "[t]here simply is no question that [defendant] is aware of the claims pending in this MDL."); *1025 W. Addison St. Apts.*, 2021 WL 2136073 at *8 (alternative process on defendant's counsel under Rule 4(f)(3) was appropriate where serving counsel "allowed for the realization of the 'core function of service,' which is 'to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.'")(citations omitted); *Commodity Futures*, 2020 WL 956302 at *6 (service on foreign defendant by email to an address previously used by plaintiff to contact him and service on his counsel was proper under Rule 4(f)(3) because it "was reasonably calculated to give notice of the lawsuit . . . .").

CONCLUSION

For the foregoing reasons, Plaintiff Ty Inc. respectfully requests that, pursuant to Federal Rules of Civil Procedure 4(f)(3) and 4(h), this Court authorize service of Ty's Complaint and summons papers on Defendants Ty Beanies Pty Limited and Ty Nordic OÜ Ty by: (1) emailing its Complaint and Summons to Mr. Neson at tom@nordic.com, tom@beanies.com.au, and tom@tomson.ee, and (2) emailing its Complaint and Summons to Defendants' Estonian counsel at kaspar@lauspartners.com, and that this Court authorized service of Ty's Complaint and summons papers on Defendant Sune Group Pty Ltd by (1) emailing its Complaint and Summons to Mr. Neson at the addresses indicated above and to Mr. Suleimanov at info@sune.au. Courtesy copies of all service materials will be sent to all defendants via international courier at addresses where such defendants are known to have received courier deliveries in the past. Ty further requests that this Court order and deem that service will be effective on Defendants after Ty has completed the aforementioned steps, with service being effective based on the time emails are sent, irrespective of the date of actual receipt.

Dated: April 18, 2025

Respectfully submitted,

HUSCH BLACKWELL, LLP

By: */s/ J. Aron Carnahan*
J. Aron Carnahan
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Telephone: 312.526.1612
Facsimile: 312.655.1501
aron.carnahan@huschblackwell.com

*Attorneys for Plaintiff Ty Inc.*